IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

THE UNITED STATES OF AMERICA    )
ex rel. MICHAEL TOMLIN         )
                              )    No. 3-02-1179
v.                          )
                              )
ROYCO, INC. d/b/a ESRD Laboratory;   )
MARK GINSBURG; SCOTT       )
GINSBURG; NATIONAL        )
NEPHROLOGY ASSOCIATES, INC.;   )
and JEROME S. TANNENBAUM   )


TO:    Honorable John T. Nixon, District Judge


## REPORT AND RECOMMENDATION

The Notice of Filing in Further Support of Their Request for Attorneys' Fees, Costs, Expenses and Injunctive Relief, filed by defendants National Nephrology Associates, Inc. ("NNA") and Jerome S. Tannenbaum (Docket Entry No. 121) and the Notice of Filing in Further Support of his Request for Attorneys' Fees, Costs, Expenses and Injunctive Relief, filed by defendant Mark Ginsburg (Docket Entry No. 122) have been referred to the Magistrate Judge for Report and Recommendation. See order entered July 21, 2009 (Docket Entry No. 125).[1]


## I. BACKGROUND

This case was not the first lawsuit involving two of these parties. In May of 2001, Michael Tomlin and his company sued defendants Tannenbaum and NNA in state court.[2] The plaintiff's

---

[1] The order specifically referred the matters to Magistrate Judge Brown, who subsequently recused himself.

[2] The original claims were for an accounting and for breach of a real estate commissions contract and a marketing contract, and misappropriation of trade secret.

motion to amend to add RICO claims for violation of the Medicare and Medicaid anti-kickback law and for making false statements to the Federal Aviation Administration ("FAA") was denied, but the plaintiffs were allowed to add a RICO claim relating to "fraud in 'The Program.'"  See Exhibit N to the plaintiff's complaint.  Based on the RICO claim in the amended complaint, the defendants removed the case to this Court on January 3, 2002, see Tomlin v. IMRAC Corp., 3-02-0016.  The RICO claims were dismissed by order entered September 20, 2002, and the case remanded back to state court.[3]

While that case was pending in state court, Mr. Tomlin, as relator,[4] filed this qui tam action on December 6, 2002, pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq., claiming that the defendants violated the Medicare and Medicaid anti-kickback statute and that defendants NNA and Tannenbaum made false statements to the FAA that allowed them to fly from Boston to Nashville on September 11, 2001.  The relator was represented by G. Thomas Nebel and Suzette Peyton.  The United States declined to intervene on December 30, 2003 (Docket Entry No. 15), the case was unsealed, and the defendants were subsequently served with process.  On March 4, 2004, Bobby Lee Cook also entered an appearance on behalf of the relator.  See Docket Entry No. 21.

On April 12, 2004, the three defendants filed motions to dismiss (Docket Entry Nos. 33, 39, and 41).[5]

On May 4, 2004, counsel for defendant Mark Ginsburg wrote to Mr. Nebel, advising of the defendant's intent to move for sanctions in accord with Rule 11 of the Federal Rules of Civil Procedure, providing the required safe harbor notification.  See Rule 11(c)(2).  On June 9, 2004,

---

[3]  All claims were dismissed in June of 2004, except that the plaintiff's claims relating to real estate commissions proceeded in state court.  See Docket Entry No. 60, at 2.

[4]  The relator is referred to herein as both the "relator" and the "plaintiff."

[5]  Although counsel for defendant Mark Ginsburg also entered an appearance on behalf of defendant Royco, Inc. d/b/a ESRD Laboratory and Scott Ginsburg, see Docket Entry No. 36, it appears that defendants Royco, Inc. d/b/a ESRD Laboratory and Scott Ginsburg were never served in this action.  See initial case management order entered July 30, 2004 (Docket Entry No. 60).

2

"The Law Offices of Tom Nebel, P.C. and The Law Offices of Cook and Connelly," presumably meaning Tom Nebel, Suzanne Peyton, and Bobby Lee Cook, moved to withdraw as counsel for the relator (Docket Entry No. 9), citing "irreconcilable differences [that] have arisen between counsel and Plaintiffs (sic) as to matters central to the prosecution of this case."  Docket Entry No. 45.  By order entered June 30, 2004, a status conference was scheduled on July 19, 2004 (Docket Entry No. 57).  The motion to withdraw was granted by order entered July 9, 2004 (Docket Entry No. 58).  On July 13, 2004, Joseph F. Welborn III, Gayle Malone, and Kathryn Sasser of the Walker, Bryant, Tipps & Malone law firm ("Walker, Bryant") (now Walker, Tipps & Malone) entered an appearance on behalf of the relator by entering into a proposed agreed order to reschedule the July 19, 2004, status conference to July 29, 2004.

A case management conference was held on July 29, 2004, at which time the relator was represented by counsel from Walker, Bryant.  On September 10, 2004, Mr. Welborn, Mr. Malone, and Ms. Sasser moved to withdraw (Docket Entry No. 63).[6]  On September 30, 2004, Marshall T. Cook and Sean K. Hornbeck of the firm of Greenebaum Doll & McDonald PLLC ("Greenebaum Doll") entered an appearance on behalf of the relator (Docket Entry No. 65).

The defendants' motions to dismiss were granted by order entered October 4, 2004 (Docket Entry No. 66), in which the Court held that the alleged fraud had been publicly disclosed before this lawsuit was filed and the relator was not an original source of the allegations.  In that order, the Court found that the relator did not dispute that there had been a prior public disclosure of the allegations in the qui tam action and that the qui tam case was "based upon" the prior publicly disclosed allegations.  The Court found that the relator did not have firsthand knowledge of the information upon which the allegations were based since his knowledge came through other individuals with firsthand knowledge or through court documents.  The Court further held that, even if he had direct and independent knowledge of the allegations, he was still not an original source

---

[6] That motion was denied as moot by order entered October 4, 2004 (Docket Entry No. 66).

3

since he did not provide the information to the government before the prior public disclosure in his state court case.

On October 19, 2004, the plaintiff filed a motion for reconsideration (Docket Entry No. 67), which was denied by order entered December 23, 2004 (Docket Entry No. 102).

On October 22, 2004, defendants NNA and Tannenbaum filed a "Bill of Costs and Motion for Attorneys Fees, Expenses, and Injunctive Relief" (Docket Entry No. 69). The Clerk refused to consider the Bill of Costs for the defendants' failure to comply with then Local Rule 13(d), and referred the matters of attorney fees and injunctive relief to the Court for decision. See Docket Entry No. 86. Defendant Mark Ginsburg filed a motion for Rule 11 sanctions and for attorneys' fees and expenses pursuant to 31 U.S.C. § 3730(d)(4) on November 3, 2004 (Docket Entry No. 75). The plaintiff sought to file responses to the motions under seal, see Docket Entry Nos. 80-81, 87-89, and 98-100), and Mr. Nebel filed a response (Docket Entry Nos. 93-95) to defendant Ginsburg's motion.

The plaintiff filed a notice of appeal on January 12, 2005 (Docket Entry No. 106).

By order entered January 21, 2005 (Docket Entry No. 105), oral argument was scheduled on February 7, 2005, on the pending motions for Rule 11 sanctions, attorneys' fees, costs, expenses and injunctive relief, and other pending motions. On January 26, 2005, counsel from Greenebaum Doll moved to withdraw as plaintiff's counsel. By orders entered February 4, 2005 (Docket Entry Nos. 109 and 110), the motion to withdraw was granted and the hearing was rescheduled to February 28, 2005, at which time the motions were reserved until a ruling by the Court of Appeals.

In an unpublished opinion entered on January 24, 2006, the Court of Appeals for the Sixth Circuit affirmed this Court's order of dismissal (Docket Entry No. 113).[7] In the decision, the Court

---

[7] The panel of the Sixth Circuit determined that oral argument was not needed in accord with Rule 34(a) of the Rules of Appellate Procedure, which provides that oral argument must be allowed unless the three judge panel unanimously agrees that oral argument is unnecessary because (A) the appeal is frivolous; (B) the dispositive issue or issues have been authoritatively decided; or (C) the "facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." The Sixth Circuit did not indicate which of those criteria applied.

of Appeals found that, despite the plaintiff's argument, the Court lacked jurisdiction over the plaintiff's claim because he was not an original source of the allegations of fraud.

In synopsizing the law undergirding qui tam actions, the Court of Appeals explained that, for a relator to be an original source he must have "direct and independent knowledge" of the information and must have voluntarily provided the information to the government before public disclosure and before filing the qui tam action. As the Sixth Circuit further explained, "knowledge" is "direct" if it is "marked by absence of intervening agency," and "independent" if not based on public disclosure.

The Court of Appeals noted, as had this Court, that the plaintiff did not dispute that the allegations in this case were previously disclosed. Specifically, the Court found that the fraud allegations asserted in this lawsuit had been previously publicly disclosed when the plaintiff sought to add RICO claims in his state court action against defendants NNA and Tannenbaum in 2001. Whether or not the information upon which the plaintiff relied was obtained independently of the public disclosure, the Court found that his knowledge was not direct but had come from intermediaries, i.e., employees of NNA and through the discovery process, and that he did not have firsthand knowledge of the information. Since he had not disclosed the information to the government before publicly disclosing the same information in his state lawsuit in 2001, the Court found that he was not an original source.

By order entered June 7, 2006 (Docket Entry No. 115), this Court dismissed all pending motions without prejudice and with leave to re-file updated motions after the decision by the United States Supreme Court on the petition for writ of certiorari. The Supreme Court denied certiorari on October 2, 2006 (Docket Entry No. 116).

On January 17, 2008, defendants NNA and Tannenbaum filed a "Notice of Filing" in "Further Support of their Request for Attorneys' Fees, Costs, Expenses, and Injunctive Relief"

(Docket Entry No. 121).[8] On January 22, 2008, defendant Mark Ginsburg filed a "Notice of Filing" in "Further Support of his Request for Attorneys' Fees, Costs, Expenses, and Injunctive Relief" (Docket Entry No. 122).[9]

On February 7, 2008, the Clerk again refused to consider the Bill of Costs (Docket Entry No. 121-1) filed by defendants NNA and Tannenbaum for failure to comply with Local Rule 54.01(a) (Docket Entry No. 123).

The plaintiff, now proceeding pro se, filed a response (Docket Entry No. 124) to the defendants' supplemental filings.

## II.  APPLICABLE LAW

A.    Applicable Portion of False Claims Act

Section (e)(4) of 31 U.S.C. § 3730 provides in pertinent part:

(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing . . . unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

---

[8] The defendants specifically provided "notice of their renewal of their motion and the filing of the following:" (1) Bill of Costs and Motion for Attorneys' Fees, Expenses, and Injunctive Relief (Docket Entry No. 69); (2) Memorandum in support (Docket Entry No. 70); (3) Appendix in support (Docket Entry No. 73); (4) affidavit of L. Webb Campbell (Docket Entry No. 71); (5) affidavit of Greg Shinall (Docket Entry No. 72); (6) motion to have the Court strike and refuse to accept the relator's ex parte submissions (Docket Entry No. 82); (7) response to the relator's motion for leave to file brief and affidavit under seal, and memorandum in support of motion to strike (Docket Entry No. 83); (8) supplemental memorandum in further support of defendants' response to relator's motion for leave to file brief and affidavit under seal and memorandum in support of motion to strike (Docket Entry No. 101); (9) notice of defendants' renewal of motion for attorneys' fees, expenses and injunctive relief (Docket Entry No. 117); and (10) supplemental filing in further support of pending request for attorney's fees, costs, expenses and injunctive relief, including the supplemental affidavits of Mr. Campbell and Mr. Shinall (Docket Entry Nos. 119-1, 119-2, and 119-3).

[9] Defendant Ginsburg specifically provided "notice of his renewal of his motion and the filing of the following:" (1) motion for Rule 11 sanctions and attorneys' fees and expenses pursuant to 31. U.S.C. § 3730(d)(4); (2) memorandum in support (Docket Entry No. 76); (3) affidavit of Michael W. Moskowitz (Docket Entry No. 77); (4) affidavit of Kathryn A. Stephenson (Docket Entry No. 78); (5) joinder in response to relator's motion for leave to file brief and affidavit under seal (Docket Entry No. 84); (6) motion for permission to file reply to the response to motion for Rule 11 sanctions (Docket Entry No. 103); and (7) notice regarding motion for Rule 11 sanctions and attorneys' fees and expenses pursuant to 31 U.S.C. § 3730(d)(4) (Docket Entry No. 118).

6

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

B.    Case Law Interpretation of Section (e)(4)

In a case of first impression, the Court of Appeals for the Sixth Circuit in United States ex re. McKenzie v. BellSouth Commc'ns, Inc., 123 F.3d 935 (6th Cir. 1997), cert. denied, 522 U.S. 1077, 118 S.Ct. 855, 139 L.Ed.2d 755 (1998), determined when a relator is an "original source," holding that "[t]o qualify as an original source, the relator must have direct and independent knowledge of the information on which the publicly disclosed allegations are based.  In addition, the relator must provide the government with the information prior to any public disclosure."  123 F.3d at 943 (emphasis added).

In McKenzie, the relator disclosed her claims to the government after the nearly identical allegations were publicly disclosed in two lawsuits, brought by other plaintiffs against companies owned by BellSouth.  In analyzing the meaning of "based upon," the Sixth Circuit discussed the varying positions of courts from other circuits and adopted the Tenth Circuit interpretation[10] that "based upon" means "supported by," thus precluding plaintiffs "who base any part of their allegations on publicly disclosed information from bringing a qui tam action."  123 F.3d at 940.

To the extent that McKenzie could be read as inapplicable to a case in which, as in the instant case, the relator himself made the prior public disclosures, the interpretation of the statutory language "based upon" and whether a qui tam plaintiff's claims could be "based upon" his own public disclosures in a prior lawsuit were clearly resolved in United States ex rel. Jones v. Horizon Healthcare Corp., 160 F.3d 326 (6th Cir. 1999).[11]  The Jones relator had herself filed a prior whistle blower lawsuit before disclosure to the United States and had, in the whistle blower case, made

---

[10]  See United States ex rel. Precision Co. v. Koch Indus., Inc., 971 F.2d 548 (10th Cir. 1992), cert. denied, 507 U.S. 951, 113 S.Ct. 1364, 122 L.Ed.2d 742 (1993).

[11]  See also United States ex rel. Bledsoe v. Community Health Sys., Inc., 342 F.3d 634, 646 (6th Cir. 2003) (decided after this case was filed).

allegations of Medicare fraud, which were the same allegations underlying her qui tam case.[12]  The

Court found in Jones, as it did in this case, that the realtor must provide information to the United

States prior to having publicly filed her first lawsuit, and that, since she did not, she, like the plaintiff

in this case, was not an original source.


<u>C.</u>      <u>Rule 11</u>

Rule 11(b)(1)-(2) of the Federal Rules of Civil Procedure provides as follows:

By presenting to the court a pleading, written motion or other paper--whether by
signing, filing, submitting or later advocating it--an attorney or unrepresented party
certifies that to the best of the person's knowledge, information, and belief, formed
after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause
unnecessary, delay, or needlessly increase the costs of litigation; [and]

(2) the claims, defenses, and other legal contentions are warranted by existing law
or by a nonfrivolous argument for extending, modifying, or reversing existing law
or for establishing new law;

Rule 11(c)(1) provides:

[T]he court may impose an appropriate sanction on any attorney, law firm, or party
that violated the rule or is responsible for the violation.  Absent exceptional
circumstances, a law firm must be held jointly responsible for a violation committed
by its partner, associate, or employee.

Rule 11(c)(2) provides that "[i]f warranted, the court may award to the prevailing party the

reasonable expenses, including attorney's fees, incurred for the motion [for sanctions]".

Rule 11(c)(4) provides:

A sanction imposed under this rule must be limited to what suffices to deter
repetition of the conduct or comparable conduct by others similarly situated.  The
sanction may include nonmonetary directives; an order to pay a penalty into court;
or, if imposed on motion and warranted for effective deterrence, an order directing
payment to the movant of part or all of the reasonable attorney's fees and other
expenses directly resulting from the violation.

---

[12]  In Jones, there was no dispute about whether the relator had "direct and independent
knowledge" of the allegations that were the subject of her FCA complaint.

8

Rule 11(c)(5)(A) provides that a court must not impose a monetary sanction "against a represented party for violating Rule 11(b)(2)."

The Advisory Committee Comments to the 1993 amendments to Rule 11 provide:

> Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty. However, under unusual circumstances, particularly for (b)(1) violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation. Accordingly, the rule authorizes the court, if requested in a motion and if so warranted, to award attorney's fees to another party.

D.    Award of Fees and Expenses Under False Claims Act

Section (d)(4) of the FCA, 31 U.S.C. § 3730, provides as follows:

> If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was <u>clearly</u> frivolous, <u>clearly</u> vexatious, or brought primarily for purposes of harassment.

(Emphasis added.)

The decision of whether to award fees under Section (d)(4) is "purely discretionary" with the Court. <u>United States ex rel. Mikes v. Straus,</u> 98 F.Supp.2d 517, 526 (S.D.N.Y. 2000), <u>aff'd,</u> 274 F.3d 687 (2nd Cir. 2000). <u>See also United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.,</u> 528 F. Supp.2d 533, 537, 543 (E.D. Pa. 2007). The award of fees under the FCA is "reserved for rare and special circumstances." <u>United States ex rel. Rafizadeh v. Continental Common, Inc.,</u> 553 F.3d 869, 875 (5th Cir. 2008); <u>United States v. Pfingston v. Ronan Eng'g Co.,</u> 284 F.3d 999, 1006-07 (9th Cir. 2002); <u>Atkinson,</u> 528 F.Supp.2d at 543 ("high standard required").

## III.  PENDING MOTIONS

A.    Motion for Rule 11 Sanctions, filed by defendant Mark Ginsburg (Docket Entry No. 75)

In his motion, defendant Ginsburg seeks Rule 11 sanctions based on Rule 11(b)(1) and (2), along with attorneys' fees and costs pursuant to 31 U.S.C. § 3729(d)(4). The Court will first address

9

the motion for Rule 11 sanctions and separately address his section 3730(d)(4) motion, along with the similar motion filed by defendants NNA and Tannenbaum. Defendant Ginsburg seeks an award of $93,389.16 in attorneys' fees and costs.[13]

It is the defendant's position that the plaintiff simply "dressed up" his personal grievances against NNA and Tannenbaum in his "long-running legal battle" with them, sweeping defendant Ginsburg along to "increase the costs of litigation to as many defendants as possible in the hope that his improper litigation tactics might lead to some recovery." Docket Entry No. 122-2, at 12-13; Docket Entry No. 76, at 12-13. While on its face somewhat hyperbolic, it is understandable that defendant Ginsburg believes that he is a side actor in the longer standing dispute that did not involve him. However, the fact that the plaintiff unsuccessfully sought to bring RICO claims based on the same underlying factual allegations against other defendants does not necessarily mean that this action was brought for an improper purpose. The defendants never addressed--nor did they need to do so--the factual contentions brought by the plaintiff in this action. The plaintiff's qui tam case was dismissed on jurisdictional grounds, not because the underlying factual allegations were false or frivolous.

Although in his memorandum in response to the motion, Mr. Nebel asserts that defendant Ginsburg did not comply with Rule 11(c)(2) and did not forward a proposed Rule 11 motion to Mr. Nebel before the motion was filed on November 3, 2004, see Docket Entry No. 93, at 9, he did not attest in his affidavit that he did not receive a copy of the motion with the May 4, 2004, letter. See Docket Entry No. 95. It appears that Mr. Nebel is arguing that he did not receive a copy of the exact motion until it was filed. While the motion ultimately filed varied from the proposed Rule 11 motion, it was substantively sufficiently similar. Most significantly, the proposed motion outlined

_____

[13] Although counsel for defendant Ginsburg provided affidavits of counsel, see Docket Entry Nos. 122-4 and 122-5; Docket Entry Nos. 77 and 78, attesting to the number of hours spent defending this action and their hourly rates, they did not submit any time records from which a determination of the reasonableness of the hours could be determined, nor did they submit any invoices of the expenses incurred. However, they indicated that they would submit detailed billing statements or expert affidavits as to the reasonableness of counsel's rate or the number of hours expended, upon the Court's request. Id. at 2 n.1.

10

the Sixth Circuit case law relating to the public disclosure bar. Requiring a party to serve a copy of the exact Rule 11 motion that is filed at the conclusion of the lawsuit would result in the anomaly of precluding a party from updating the chronology of the case since the proposed Rule 11 motion was served.

The thrust of the safe harbor provision of Rule 11(c)(2) is to provide a party notice of the basis for seeking Rule 11 sanctions to allow the filing party an opportunity to withdraw any offending filings. Mr. Nebel was clearly on notice of the basis for defendant Ginsburg's Rule 11 motion when he was served with the motion on May 4, 2004, and the prerequisite of the safe harbor provision of Rule 11(c)(2) was satisfied.

In response to the Rule 11 motion, Mr. Nebel argues that the case was not frivolous because the Department of Justice ("DOJ") never mentioned any concerns about the viability of the action during many and extensive conversations with DOJ attorneys before and after the qui tam action was filed, even though they were aware of the prior state court action. He also suggests that co-counsel, Bobby Lee Cook, would not have associated himself in this case if the action were frivolous.[14] The fact that knowledgeable and renowned lawyers never addressed the public disclosure bar with Mr. Nebel does not immunize him from conducting his own investigation and/or analysis once he has been put on notice of a potential Rule 11 issue.

Mr. Nebel also contends that Rule 11 sanctions are not appropriate since there was a "split of opinion" about the applicability of the public disclosure bar to quit tam claims, the law remained unsettled, and, at the least, he had nonfrivolous argument for extending, modifying or reversing existing law. Docket Entry No. 93, at 4-5. In support, he cites United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc., 755 F. Supp. 1040 (S.D. Ga. 1990), which the plaintiff had also cited in response to the defendants' motions to dismiss. Id. at 4; Docket Entry No. 95. at 7; Docket Entry No. 45, at 13-14. However, in his response to the motions

---

[14] It is not clear the extent to which Mr. Cook had previously been involved in qui tam cases. It is also not clear whether the DOJ attorneys who conferred with Mr. Nebel had themselves been involved in any qui tam cases in this Circuit or were aware of clear Sixth Circuit law.

11

to dismiss, the plaintiff quoted <u>Stinson,</u> as follows: "Because this section plainly inures to the benefit of the government, the Court does not see how [a defendant] has standing to make their argument." Docket Entry No. 45, at 14. The section to which the Court in <u>Stinson</u> referred, however, is 31 U.S.C. § 3730(b)(2), which is not at issue in this case. <u>See</u> 755 F. Supp. at 1054.[15] Of even more concern, however, is that the plaintiff did not even address the Sixth Circuit ruling in <u>McKenzie,</u> after having been specifically alerted to it by having received the defendants' proposed Rule 11 motion and by the defendants' motions to dismiss. Clearly <u>McKenzie</u> and <u>Jones</u> were binding Sixth Circuit precedent that this Court was bound to follow. The plaintiff failed to even acknowledge that precedent, much less specifically make any arguments to modify or reverse those cases.[16]

The plaintiff could have clearly argued that the Sixth Circuit law should be modified or reversed. In determining in <u>McKenzie</u> that a relator cannot be an original source if he did not disclose to the government prior to the previous public disclosure, the Sixth Circuit reviewed case law from other circuits that held differently. In fact, in his concurrence in <u>Jones,</u> Judge Gilman questioned part of the rulings in <u>McKenzie,</u> noting that "[v]irtually every court of appeals that has considered the public disclosure bar explicitly or implicitly agrees on one thing, however: the language of the statute is not so plain as to clearly describe which cases Congress intended to bar." <u>Jones,</u> 160 F.3d at 336 (Gilman, J. concurring) (citing <u>United States ex rel. Findley v. FPC-Boron Employees' Club,</u> 105 F.3d 675, 681 (D.C. Cir.), <u>cert. denied,</u> 522 U.S. 865, 118 S.Ct. 172, 139 L.Ed.2d 14 (1997)). Despite his misgivings, Judge Gilman felt compelled to concur in the majority decision in <u>Jones</u> because the <u>Jones</u> Court was bound by the prior ruling in <u>McKenzie.</u> Potentially,

---

[15] The Court also notes that <u>Stinson</u> preceded the Sixth Circuit cases of <u>McKenzie</u> and <u>Jones.</u>

[16] Just as baffling is the plaintiff's characterization of the public disclosure bar as a "procedural technicality" that should not preclude consideration on the merits. <u>See</u> Docket Entry No. 93, at 2. Many otherwise meritorious lawsuits are dismissed and do not proceed on their merits based on "technicalities," whether those be statute of limitations, failure to exhaust administrative remedies, or other reasons.

the plaintiff could have clearly argued for modification or reversal of <u>McKenzie</u> by an en banc panel of the Sixth Circuit or by the United States Supreme Court, if certiorari were accepted.

If the plaintiff had been able to modify or reverse the existing law of this Circuit, he still would have had to face hurdles relating to whether he had "direct" and "independent" knowledge to be an original source. However, the case law on that issue in the Sixth Circuit is not nearly as unequivocal as it is on the requirement that the relator must have disclosed to the federal government before the prior public disclosure. In fact, defendant Ginsburg did not cite any Sixth Circuit cases to support his position that the relator did not have "direct" knowledge.[17] Courts have not been uniform in their analyses when a relator, who is not a classic whistle blower, assumes a role as a self-appointed private attorney general and tracks down information through his own (or his lawyer's) investigation. <u>See United States ex rel. Haskins v. Omega Institute, Inc.,</u> 25 F.Supp.2d 510, 514-15 (D.N.J. 1998); <u>United States v. Stinson, Lyons, Gerlin & Bustamante, P.C. v. Provident Life & Accident Ins. Co.,</u> 721 F. Supp. 1247, 1257-58 (S.D. Fla. 1989). <u>See also United States ex rel. Hartigan v. Palumbo Bros., Inc.,</u> 797 979 F. Supp. 624 (N.D. Ill. 1992); <u>United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Pilot Life Ins. Co.,</u> 1991 WL 210855, *11-12 (M.D.N.C. Aug. 6, 1991); <u>United States ex rel. Givler v. Smith,</u> 760 F.Supp. 72 (E.D. Pa. 1991). <u>Cf. Branhan v. Mercy Health Sys. of Sw. Ohio,</u> 188 F.3d 510, 1999 WL 618018 (6th Cir. Aug. 5, 1999) (relator had no "first-hand knowledge"). <u>But see</u> concurring and dissenting opinion (Clay, J.) (relator had direct knowledge).

Therefore, the question is whether failing to clearly address Sixth Circuit precedent was frivolous when the plaintiff could have acknowledged such precedent and yet argued for a modification or reversal of the law. Despite the plaintiff's failing to acknowledge Sixth Circuit precedent, neither this Court nor the Court of Appeals made explicit findings that this case was

---

[17] In neither <u>McKenzie</u> nor <u>Jones,</u> cited by the defendant, was there an issue about whether the relator had "direct" knowledge.

frivolous or even implicitly intimated that the application of sanctions would be appropriate.[18]  The defendants also suggest that such an inference can be drawn from the fact that the Court of Appeals did not even schedule oral argument.  However, the Court made no such indication.  See n.7 supra.

Although a close case, the Court finds that, since there were nonfrivolous grounds to seek modification or reversal of the law and since the arguments plaintiff made in response to the defendants' motions to dismiss were the same arguments he would have used if he had explicitly argued that McKenzie should be reversed, the plaintiff or his counsel should not be sanctioned under Rule 11.

Even if the plaintiff's failure to acknowledge Sixth Circuit precedent was violative of Rule 11, the Court would decline, in its discretion, to impose Rule 11 sanctions in this case.

Mr. Nebel filed a motion to withdraw on June 9, 2004 (Docket Entry No. 54), slightly more than one month after defendant's counsel mailed the May 4, 2004, letter.  If three days are added, in accord with Rule 6(d) of the Federal Rules of Civil Procedure, in effect at that time, to the 21 day period provided in Rule 11(c)(2), Mr. Nebel's motion to withdraw as counsel was filed only 12 days after the Rule 11(c)(2) deadline for withdrawing or correcting the claim.  Although it can be assumed that Mr. Nebel did not seek to withdraw as counsel because he believed the plaintiff's claim to be unwarranted by existing law, the Court is not willing to sanction him under Rule 11 under these circumstances.

Defendant Ginsburg is apparently not seeking Rule 11 sanctions from any counsel other than Mr. Nebel and it appears that it is only Mr. Nebel to whom defendant's counsel sent the required Rule 11(c)(2) notice.  Although the defendant is correct that the plaintiff's last attorneys--as well as intervening counsel--are potentially subject to Rule 11 sanctions for continuing to prosecute a claim violative of Rule 11, it is also clear that the defendant is not seeking such sanctions against other

---

[18]  Defendants NNA and Tannenbaum suggest that this Court held that the plaintiff's arguments were "without merit."  Docket Entry No. 68, at 2.  However, the Court did not so indicate. After addressing the public disclosure bar and the original source rule, the Court found that the plaintiff's "remaining arguments [were] without merit."  Docket Entry No. 66, at 7 (emphasis added).

counsel representing the plaintiff. <u>See</u> Docket Entry No. 122-2, at 1 n.1; Docket Entry No. 76, at 1 n.1.

Defendant Ginsburg also seeks Rule 11 sanctions against the plaintiff himself. However, as the defendant points out, Rule 11 sanctions cannot be imposed against a represented party for violating Rule 11(b)(2) (when the claims are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law). <u>See</u> Rule 11(c)(5)(A); <u>Union Planters Bank v. L & J. Dev. Co., Inc.,</u> 115 F.3d 378, 384 (6th Cir. 1997). In fact, the Sixth Circuit has found that "[c]ourts have generally declined to impose sanctions on represented parties, except when a party misrepresented key facts during his deposition and at trial. <u>Rentz v. Dynasty Apparel Indus., Inc.,</u> 556 F.3d 389, 398 (6th Cir. 2009). There is no indication that the plaintiff in this case ever misrepresented any facts to his attorney, to defendants' counsel, and certainly not at a deposition or trial since he was not deposed and the case did not proceed to trial.

In addition, the plaintiff has been unrepresented only for brief periods of time until his last lawyers were granted leave to withdraw by order entered January 31, 2005 (Docket Entry No. 108), after proceedings were concluded in this Court, and no Rule 11(c)(2) notice was sent to him during the time he was unrepresented. Under those circumstances, the Court should decline to impose Rule 11 sanctions against the plaintiff himself.

15

B.      Motions for Attorneys' Fees and Expenses, filed by defendant Mark Ginsburg and Defendants NNA and Tannenbaum (Docket Entry Nos. 75 and 69)

In addition to the $93,389.16 sought by defendant Ginsburg, defendants NNA and Tannenbaum seek an award of $184,280.00 in attorneys' fees and $4,746.49 in costs and expenses[19] against the plaintiff.[20]

The standard for imposition of attorney's fees and costs under 31 U.S.C. § 3730(d)(4) is somewhat different from the Rule 11 standard. Specifically, section 3730(d)(4) provides that reasonable attorneys' fees and expenses can be awarded to the defendant if the action was "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." Just as the Court addressed in the context of Rule 11 supra, the Court again cannot find that the filing of this action was "clearly vexatious, or brought primarily for purposes of harassment." See United States ex rel. Woodruff v. Hawaii Pacific Health, 2009 WL 734057, *11-12 (D. Haw. Mar. 18, 2009); United States ex rel. Haight v. Catholic Healthcare West, 2008 WL 607150 (D. Ariz. Feb. 29, 2008); United States ex rel. Montgomery v. St. Edward Mercy Med. Ctr., 2008 WL 110858, *5 (E.D. Ark. Jan. 8, 2008).

Defendants NNA and Tannenbaum describe the prolonged nature of this case as involving up to four lawsuits. See Docket Entry No. 70, at 1. In fact, the plaintiff has filed two lawsuits against defendants NNA and Tannenbaum. The first was in state court, asserting claims arising from

---

[19]      As did defendant Ginsburg, counsel for defendants NNA and Tannenbaum provided affidavits of counsel, see Docket Entry Nos. 121-9 and 121-10; Docket Entry Nos. 71 and 72, attesting to the number of hours spent defending this action and their hourly rates, but they did not submit any time records from which a determination of the reasonableness of the hours could be determined, nor did they submit any invoices of the expenses incurred. However, they indicated that their billing statements would be provided for in camera inspection upon the Court's request.

[20]      Although defendant Ginsburg seeks Rule 11 sanctions against the plaintiff and Mr. Nebel, it appears that he and defendants NNA and Tannenbaum seek an award of fees under 31 U.S.C. § 3730(d)(4) only against the plaintiff himself. See Docket Entry No. 121-2, at 12; Docket Entry No. 70, at 12; Docket Entry Nos. 122-2, at 7; Docket Entry No. 76, at 7. See, however, Docket Entry No. 122-2, at 10; Docket Entry No. 76, at 10 (defendant Ginsburg appears to suggest that section 3730(d)(4) sanctions can be imposed against plaintiff's counsel). But see Pfingston v. Ronan Eng'g Co, 284 F.3d 999, 1005-06 (9th Cir. 2002); United States ex rel. Graham County Soil & Water Conservation Dist., 2007 WL 2344821, *6 (W.D.N.C. Aug. 14, 2007).

16

a consulting agreement entered into between the plaintiff and NNA. See Docket Entry No. 35. When the plaintiff was permitted to add a RICO claim in the state court case, the defendants removed the case to this Court, the RICO claim was dismissed, and the case was remanded back to state court. The state court apparently commented that the plaintiff's claims in that case really constituted "two lawsuits in one." Docket Entry No. 121-2, at 1 n.1; Docket Entry No. 70, at 1 n.1. However characterized, the plaintiff has only filed one prior lawsuit against defendants NNA and Tannenbaum and no prior lawsuits against defendant Mark Ginsburg.

The defendants also make much of the fact that the plaintiff has been involved in numerous lawsuits, describing him as a "near-professional litigant with a long history of litigious behavior in the Nashville community," Docket Entry No. 70, at 1, 14-15 and n.9, apparently attempting to portray him as frequently filing frivolous lawsuits. In many of those cases, the plaintiff was the defendant, and there is nothing in the record to support any supposition that the other cases were frivolous or improperly prosecuted. In fact, the defendants have provided no information about any of the lawsuits in which the plaintiff has been party. The fact that one individual has been involved in an extensive number of lawsuits may be unusual and may be indicative of something but there is nothing to suggest that the "something" is the plaintiff's desire to litigate for the sole sake of litigating or to file frivolous lawsuits for the sport of it.

Defendants NNA and Tannenbaum also decry plaintiff's discovery responses. Specifically, the defendants point to his response to the question of whether he made disclosure to the government before October 18, 2001,[21] that he had disclosed to the government before filing the lawsuit. Defendants also point to the fact that the plaintiff refused to respond to interrogatories from defendant Ginsburg about whether he had direct and independent knowledge of the false claim allegations, and refused to respond to their interrogatory about communications between the

---

[21] October 18, 2001 is the date on which the plaintiff filed his proposed amended complaint in state court, asserting RICO claims based on the same facts underlying the claims asserted in the qui tam action.

17

plaintiff, his counsel or anyone acting as an agent of the plaintiff and the government.  <u>See</u> Docket Entry No. 68, at 9-10.

The defendants may well have valid issues about the plaintiff's objections and discovery responses, and those issues, had they been raised, might have led to the imposition of sanctions. Although attorney fees, under appropriate circumstances, can be awarded in the context of an overall award of fees if not included in any award of Rule 37 sanctions when the discovery issue(s) had previously been brought to the Court's attention, the defendants never raised any discovery issues. Discovery abuses should be addressed, at least initially, in context of Rule 37 of the Federal Rules of Civil Procedure after compliance with Rule 37(a)(1) and Local Rule 37.01(a) and (b)(3), not in context of the instant motions when defendants never raised the issue in the context of a discovery motion.  In any event, it does not appear that any fees were incurred in this case as a result of the plaintiff's failure to properly respond to the discovery since the plaintiff's discovery responses were not even served until September 30, 2004, four days before the Court granted the defendants' motions to dismiss.

The Court agrees that the plaintiff re-dressed his prior unsuccessful RICO claims into qui tam claims.  Defendants NNA and Tannenbaum are understandably frustrated by what they view as the plaintiff's taking discovery in the state court case while lying in wait to file the qui tam case, and by having to defend a second action in this court after the state court claims were dismissed. However, the recasting of claims does not, by itself, reflect harassment or vexatiousness.

Thus, the Court cannot find, based on the record before it, that the plaintiff pursued this action vexatiously or primarily for the purposes of harassment.  The remaining issue is whether the plaintiff's claims were frivolous.

Again, what is befuddling about the plaintiff's approach is his totally ignoring clear Sixth Circuit precedent.  In his response to the defendants' motions to dismiss, the plaintiff noted that "Defendants argue that the Sixth Circuit has imposed an additional requirement:  that the information also be provided to the Government before the information is made known to the

18

public." Docket Entry No. 45, at 12. That is exactly what the Sixth Circuit has held. Without analyzing--or even citing to--the McKenzie and Jones cases, the plaintiff inexplicably suggests that such a restriction is for the exclusive benefit of the Government not the defendants and therefore the defendants do not have standing to raise that issue. Neither McKenzie nor Jones held anything that would remotely suggest that conclusion. Nor does United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc. 755 F. Supp. 1040 (S.D. Ga. 1990), support the plaintiff's position. As addressed above, in Stinson, the Court held that section (b)(2) of the FCA[22] inures to the benefit of the government and questioned whether the defendant even had standing to assert failure to comply with that section. Section (b)(2) is not at issue in this case. Although Stinson may be helpful to the plaintiff in other ways, the Court did not hold that the public disclosure bar/original source rule contained in section (e)(4) inures to the government's benefit and only the government has standing to raise lack of jurisdiction.

In his response, the plaintiff did, however, argue that the Court should look to the actual language of section (e)(4) of the FCA and that the defendants essentially sought to layer on a requirement that is not contained in the statute. Although that argument flies directly in the face of Sixth Circuit precedent, it is not without some case law support. See, e.g., Jones, 160 F.3d at 336 (Gilman, J., concurring); Stinson, supra.

Defendant Ginsburg cites several cases supporting the imposition of Rule 11 sanctions or attorneys fees under 31 U.S.C. § 3730(d)(4), when the Court clearly lacked subject matter jurisdiction. For example, in United States ex rel. Herbert v. National Academy of Sciences, 1992 WL 247587 (D.D.C. Sept. 15, 1992), the Court awarded attorney's fees and expenses against the plaintiff under Rule 11 and section 3730(d)(4). The Court found that the plaintiff tried to use the qui tam procedures to redress a private grievance, which the defendants argue the plaintiff herein

---

[22] Section (b)(2) provides that "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) [now Rule 4(i)] of the Federal Rules of Civil Procedure." The defendants have not raised the plaintiff's failure to comply with section (b)(2).

did.  The Herbert Court also held that the there was no jurisdiction as a result of the public disclosure bar and because the plaintiff was not an original source of any facts.  However, the Court also found there was no merit to the qui tam claims themselves and they were based on the same facts that had previously been litigated in the plaintiff's prior copyright action.  This case differs from Herbert since there has been no consideration of the merits of the plaintiff's qui tam claims.

In United States ex rel. Crescent City E.M.S., Inc., 1997 WL 570688 (E.D. La. Sept. 12, 1997), Rule 11 sanctions were awarded to the defendant against the relator's attorney in the third qui tam action that varied only from the first two qui tam actions, which had previously been dismissed, by naming another relator and changing the time period at issue.  In United States ex rel. Stewart v. Fleet Fin. Group, 1999 U.S. Dist. LEXIS 13624 (W.D. Mich. Aug. 31, 1999), the Court awarded attorney's fees and expenses against a pro se plaintiff who sued 30 defendants, including 12 state and federal judges and other public officials who had apparently been involved in other, previously litigated lawsuits filed by the plaintiff relating to his foreclosure and eviction.[23]  These cases are not sufficiently analogous to the instant case.

Defendants NNA and Tannenbaum also cite to United States ex rel. Mikes v. Straus, 98 F. Supp.2d 517 (S.D.N.Y. 2000), aff'd, 274 F.3d 687, 704-706 (2nd Cir. 2001).  In that case, the Court awarded two-thirds of the defendants' counsel's fees relating to the defense of one of the two qui tam claims, to the extent that defendants' counsel could establish the amount attributable to that claim, or otherwise a total of $5000.00, under section 3730(d)(4), when there was an "utter lack" of evidentiary support for one of the relator's claims.  Again, Mikes is distinguishable from this case because there has been no finding on the merits in this case.  See also United States ex rel. Wilson v. Graham County Soil & Water Conservation Dist., 2007 WL 2344821, *6-7 (W.D.N.C. Aug. 14, 2007) (plaintiff should not be punished by imposition of an award of fees under section 3730(d)(4) when her attorney failed to recognize and apply public disclosure doctrine), vacated and remanded on other ground, 528 F.3d 292 (4th Cir. 2008), cert. granted, 129 S.Ct. 2824, 174 L.Ed.2d 551

---

[23]  See also Stewart v. Fleet Fin., 229 F.3d 1154, 2000 WL 1176881 (6th Cir. Aug. 10, 2000).

(2009).  Cf. Martel v. Maxxam Inc., 211 F.3d 594, 2000 WL 329354 (5th Cir. Mar. 23, 2000) (section 3730(d)(4) fees awarded against plaintiff when he knew that his qui tam claims were based on published articles and his case was dismissed under the public disclosure bar).

Navigating the public disclosure bar and original source rule of the False Claims Act, 31 U.S.C. § 3730(e)(4), is not for the faint of heart.  The public disclosure bar is "far from a model of careful draftsmanship."  United States ex rel. Wilson v. Graham County Soil & Water Conservation Dist., 528 F.3d 292, 305 (4th Cir. 2008).  See also United States ex re. Mistick PBT v. Housing Auth. of City of Pittsburgh, 186 F.3d 376, 387-88 (3rd Cir. 1999), cert. denied, 529 U.S. 1018, 120 S.Ct. 1418, 145 L.Ed.2d 310 (2000) (statute "does not reflect careful drafting or a precise use of language" and is "syntactically ambiguous"); Jones, 160 F.3d at 336-37 (Gilman, J., concurring) (statute not "model of clarity"); Findley, 105 F.3d at 681.  When this action was brought, the law was still evolving and portions still undecided and without unanimity throughout the country.  See, e.g., Rockwell Int'l Corp. v. United States, 549 U.S. 457, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007) ("'information on which the allegations are based' refers to relator's allegations and not the publicly disclosed allegations").

Under the circumstances of this case and for all the reasons addressed above, the Court finds that an award of fees under 31 U.S.C. § 3730(d)(4) is not appropriate.


C.     Defendants NNA and Tannenbaum's Supplemental Filing in Further Support of Pending
       Request for Attorneys' Fees, Costs, Expenses and Injunctive Relief (Docket Entry No. 119)

Defendants NNA and Tannenbaum seek additional fees and expenses of $101,008.18 incurred from October 15, 2004, since the first motion was filed, through November 20, 2006.  They maintain that the plaintiff has "engaged in numerous post-judgment legal antics designed for no other purpose than to inflict additional expense."  Docket Entry No. 119, at 2.  Specifically, the defendants point to the plaintiff's motion for reconsideration, making ex parte filings, the appeal to the Sixth Circuit, the motion to transfer to the Eleventh Circuit, and the plaintiff's seeking a writ of certiorari to the United States Supreme Court.

21

The Court agrees with the defendants that the plaintiff's attempts, through counsel from Greenebaum Doll, to make ex parte filings were improper. That matter has been addressed by separately entered order. The Court further agrees that the plaintiff's motion for reconsideration (Docket Entry No. 67) of the Court's October 4, 2004, order was without legal foundation, and not based on the procedural history of the case.

By the agreed initial case management order entered July 30, 2004 (Docket Entry No. 60), the plaintiff was given until September 13, 2004, to file any supplemental response to the then-pending motions to dismiss, to which the defendants were given until October 15, 2004, to file replies. The initial case management order limited discovery to that related to the pending motions to dismiss and did not contemplate that the plaintiff would take any discovery. In the motion to withdraw filed by counsel from Walker, Bryant on September 10, 2004 (Docket Entry No. 63), they sought an extension of time for the plaintiff to respond to written discovery, an extension of the September 30, 2004, deposition deadline, and to allow defendants additional time to make any supplemental filing. In that motion, plaintiff, through Walker, Bryant, clearly represented that the plaintiff would "not be filing a supplement brief." Docket Entry No. 63, at 2.

In the motion to reconsider, the plaintiff, through counsel from Greenebaum Doll, referred to the proposed order drafted by defendants' counsel, which the plaintiff "had no reason to believe" would not be entered. Docket Entry No. 67, at 4, and Exhibit B. Whether or not the plaintiff had any reason to believe it would be entered, if it had been entered, it would not have provided any assistance to the plaintiff since there was no provision for the plaintiff to make any more filings.

In his reply, plaintiff argued, through counsel, that "had the discovery continued as had been contemplated by the parties and had Tomlin's deposition been taken, Tomlin's degree of knowledge could have been collected in a form of evidence that could have been used in his response to Defendants' motion to dismiss." Docket Entry No. 104, at 5. However, from July 29, 2004, the date of the initial case management conference, until counsel from Walker, Bryant moved to withdraw

22

on September 10, 2004, the parties contemplated that the defendants would complete depositions by September 30, 2004. That did not happen.

It is unclear how the plaintiff's deposition, taken by the defendants, would have advanced the plaintiff's case since the information about which he would have testified in his deposition was information he already had before he filed his response to the motions. Perhaps what counsel for Greenebaum Doll was suggesting was that, because of the plaintiff's conflict with Mr. Nebel, he did not provide relevant information to Mr. Nebel to allow Mr. Nebel to file a persuasive response, or perhaps that he provided the information to Mr. Nebel but Mr. Nebel did not use or apply it in the response. Whatever the rationale, it was supported by a slender reed, made even more shaky by reliance on ex parte filings.

By order entered December 23, 2004, denying the motion for reconsideration, the Court interpreted the plaintiff's argument that he should not be "held to the acts of his attorney who acted under a conflict of interest, because the attorney was not really acting in the (sic) his interest due to the conflict." Docket Entry No. 102, at 5. However, the Court also found that, as of June 9, 2004, when Mr. Nebel filed a motion to withdraw, the plaintiff was clearly aware of the alleged conflict. Although the Court did not specifically allude to it, despite that awareness, the plaintiff's new counsel from Walker, Bryant represented on September 10, 2004, that the plaintiff would not make any additional filings related to the then-pending motions to dismiss.

Had the defendants provided the safe harbor notification pursuant to Rule 11(c)(2) relating to the motion for reconsideration, the Court would have been inclined to grant sanctions under Rule 11.

The Court also assumes that the motion to transfer the plaintiff's appeal to the Eleventh Circuit was wholly without merit. However, the record before this Court does not include the plaintiff's motion, the order of the Court of Appeals, or the plaintiff's petition for certiorari. The Court cannot make a ruling on those matters without actually considering the documents themselves.

Although the defendants do not expressly say, the Court also assumes that the defendants continue to seek attorneys' fees, costs and expenses under 31 U.S.C. § 3730(d)(4). However, having found <u>supra</u> that such an award should not be imposed under section 3730(d)(4), the Court is unwilling to parse out or rely upon subsequent actions on the plaintiff's part for the award of fees that defendants seek.

D.    Costs

Defendants NNA and Tannenbaum have twice filed Bills of Cost and the Clerk has twice denied them. Pursuant to Rule 54(d)(1) and Local Rule 52.01(a), the Clerk of Court must, in the first instance, consider a Bill of Costs.

It is not clear why the defendants did not re-submit the second Bill of Costs in compliance with Local Rule 54.01, as the Clerk clearly explained. However, the defendants should be permitted to re-submit a Bill of Costs in accord with Local Rule 54.01.

Even though defendant Ginsburg did not file a separate Bill of Costs, the Court finds that he too should be permitted to file a Bill of Costs seeking taxable costs under 28 U.S.C. § 1920.

E.    Injunctive Relief[24]

Defendants NNA and Tannenbaum seek an order requiring the plaintiff to post a bond before he brings any subsequent lawsuit in any court against defendants NNA, Tannenbaum, or related entities or persons.

As addressed above, the plaintiff has filed two lawsuits against these defendants. Since this lawsuit was filed on December 6, 2002, over seven years ago, it does not appear that the plaintiff

_____

[24] Although defendant Ginsburg styled his Notice of Filing as being in further support of his "request for attorneys' fees, costs, expenses and injunctive relief," it does not appear that defendant Ginsburg ever previously sought injunctive relief.

has filed any other lawsuits against any of the defendants named in this case or any other related persons or entities.[25]

Having found that the plaintiff and his former attorney should not be sanctioned under Rule 11 or assessed attorneys' fees under 31 U.S.C. § 3730(d)(4), it would not be appropriate for the Court to impose a requirement that the plaintiff file a bond before filing future cases.

However, the Court does find that it would be appropriate for any further lawsuit filed against any of the named defendants in this action or any associated persons or entities to be assigned to the same District Judge and Magistrate Judge assigned to the instant case as a "related case." Therefore, should this recommendation be accepted, the plaintiff or his attorney should be required to provide the Clerk of this Court with a copy of such order upon the filing of any future lawsuit in this Court naming defendants Mark Ginsburg, Jerome Tannenbaum, or National Nephrology Associates, Inc. or related persons or entities.


F.      Plaintiff's Request for Rule 11 Sanctions

In his response to defendant Ginsburg's motion, citing only to the Advisory Committee Comments to Rule 11, the plaintiff states in summary fashion that defendant Ginsburg and his counsel should be ordered to pay his fees for opposing the Rule 11 motion. Docket Entry No. 93, at 10. Only because defendant Ginsburg spent little time responding to that request, see Docket Entry No. 122-7, at 10; Docket Entry No. 103, proposed reply, at 10, does that request not itself warrant imposition of Rule 11 sanctions. The issue of whether Rule 11 sanctions and attorneys' fees under section 3730(d)(4) was extremely close and, under no circumstances, should defendant's Rule 11 motion be subject to sanctions.

---

[25] It appears that the plaintiff no longer resides in Tennessee, since he has a Florida address.

25

## IV. RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.      The motion for Rule 11 sanctions and for attorneys' fees and expenses pursuant to 31 U.S.C. § 3730(d)(4), filed by defendant Mark Ginsburg (Docket Entry Nos. 75 and 122-1) be DENIED, except as provided in ¶ 4 below;

2.      The motion for costs, attorneys' fees, expenses, and injunctive relief and expenses filed by defendants National Nephrology Associates, Inc. and Jerome Tannenbaum (Docket Entry Nos. 69 and 121-1)) be DENIED, except as provided in ¶ 4 below;

3.      The supplemental request for attorney's fees, costs and expenses and injunctive relief, filed by defendants National Nephrology Associates, Inc. and Jerome Tannenbaum (Docket Entry No. 119) be DENIED except as provided below;

4.      Defendants Ginsburg, National Nephrology Associates, Inc., and Jerome Tannenbaum should be permitted to file (or refile) Bills of Costs in compliance with Local Rule 54.01;

5.      Plaintiff's request for Rule 11 sanctions contained in his response (Docket Entry No. 93) be DENIED.

6.      Any future lawsuits filed in this Court by the plaintiff against defendants Mark Ginsburg, Jerome Tannenbaum, and/or National Nephrology Associates, Inc. or any associated persons or entities be assigned to the District Judge and Magistrate Judge currently assigned to this case, and that, if any such lawsuits are filed in this Court in the future, the plaintiff shall be required to provide notification to the Clerk to that effect.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn,

26

474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,

JULIET GRIFFIN
United States Magistrate Judge

Case 3:02-cv-01179   Document 130   Filed 03/30/10   Page 27 of 27 PageID #: 386